UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


NOLA SPICE DESIGNS, LLC                      CIVIL ACTION

VERSUS                                       NO: 12-2515

HAYDEL ENTERPRISES INC.                      SECTION: "J" (2)
d/b/a HAYDEL'S BAKERY


## ORDER AND REASONS

Before the Court is Plaintiff/Counter-Defendant, Nola Spice Design, L.L.C. ("Nola Spice") and Third Party Defendant Raquel Duarte ("Duarte" or, collectively, "Nola Spice")'s **Motion for Summary Judgment (Rec. Doc. 60)**, Defendant/Counter-Plaintiff Haydel Enterprises, Incorporated, d/b/a Haydel's Bakery ("Haydel")'s **Motion for Summary Judgment (Rec. Doc. 85)**, and the parties' oppositions thereto (Rec. Docs. 89, 96). These motions were set for hearing on August 14, 2013 at 9:30 a.m. with oral argument. Also under consideration is Haydel's **Motion to Strike (Rec. Doc. 97)** and  Nola Spice's opposition thereto (Rec. Doc. 100). This motion was set for hearing, on the briefs, on August

1

14, 2013. The Court, having considered the motions and memoranda of counsel, the record, and the applicable law, finds that Nola Spice's Motion for Summary Judgment (Rec. Doc. 60) must be **GRANTED in part** and **DENIED in part**; that Haydel's Motion for Summary Judgment (Rec. Doc. 85) must be **DENIED**; and that Haydel's Motion to Strike (Rec. Doc. 97) must be **DENIED as moot** for the reasons set forth more fully below.

<u>**PROCEDURAL HISTORY AND BACKGROUND FACTS**</u>

This matter arises from a trademark and copyright dispute concerning "bead dogs." "Bead dogs" have historically been made by twisting broken strands of plastic Mardi Gras beads into the shape of a dog. Though all parties agree that the bead dog tradition began in the streets when Mardi Gras parade goers started making trinkets out of discarded beads, it appears that, today, some businesses and individuals create and sell merchandise centered around the bead dog.

Nola Spice claims to have started making and selling bead dog jewelry in the Spring of 2012. Nola Spice alleges that it features and sells its merchandise to friends and family, as well as on various internet sites such as Storenvy.com, Twitter.com, Facebook.com, Pinterest.com, and Etsy.com. Nola Spice's jewelry is composed of strands of small beads twisted into the shape of a

dog. The dogs are then decorated according to different themes, and, sometimes, additional accessories and/or features are added to them. An example would be a Parisian bead dog decorated with an Eiffel Tower charm. Haydel Sum. Judg., Rec. Doc. 85-1, p. 8. The sole member of Nola Spice is Duarte.

Haydel sells bead dog merchandise as well. Haydel alleges that it commissioned an artist in April 2008 to create a Mardi Gras Bead Dog to serve as its mascot. The result was a design of spherical shapes that all intersected and collided so as to resemble a dog made of Mardi Gras beads. There is also a necklace around the dog's neck and smaller spheres to represent the dog's eyes and nose. The mascot generally has a specific color scheme: purple body, yellow necklace, and green eyes and nose. In May 2008, Haydel filed two federal trademark applications, one for the phrase MARDI GRAS BEAD DOG and one for its BEAD DOG DESIGN, described in the trademark registration as a "stylized dog wearing a beaded necklace, with the dog being formed by a series of spheres designed to look like Mardi Gras style beads. The dog has two eyes and a nose, all formed by smaller beads." Haydel Sum. Judg. Exh. 2, Rec. Doc. 85. These applications were registered on October 13, 2009 and December 1, 2009, respectively, in relation to jewelry, clothing, and king cake

pastries. As of September 14, 2012, Haydel also owns a registered copyright over the BEAD DOG that extends to "photograph(s), jewelry design, 2-D artwork, [and] sculpture." Haydel's First Am. Cmplt, Exh. 1., Rec. Doc. 19-1.

Haydel alleges that since the registration of its trademarks, it has continuously used the trademarks on jewelry, clothes, and baked goods. Haydel commissioned a large bead dog statue for its bakery, and due to its popularity, has raffled multiple bead dog statues. Haydel also partnered with the Louisiana Society for the Prevention of Cruelty to Animals ("LA-SPCA") for the "Paws on Parade" fundraiser. For this event, Haydel donated their BEAD DOG DESIGN mold to allow several blank BEAD DOG DESIGN statues to be cast and decorated by different artists. The decorated statues were later paraded, and then auctioned, and are now on display around the New Orleans metropolitan area. Additionally, Haydel entered into a licensing agreement with a New Orleans retail store, Fleurty Girl, to sell BEAD DOG DESIGN earrings and necklaces. The earrings and necklaces are not made of beads, but rather appear to be sterling silver cast into molds. Haydel also created a poster, sold at Fleurty Girl, that displays several BEAD DOG DESIGN statues. In addition to its sales through Fleurty Girl, Haydel entered into

4

an agreement with a local author to create a children's book about the MARDI GRAS BEAD DOG.

Haydel alleges that, in August of 2012, its customers began to enquire about purchasing Nola Spice's bead dog jewelry from Haydel. Consequently, Haydel avers that it began an investigation into the matter at which time they learned that Duarte had posted a photo on her Facebook.com page wherein she posed with Haydel's BEAD DOG DESIGN statue. Haydel alleges that Duarte posted photos of her bead dog jewelry near the photo of Duarte and the statue, so as to intentionally confuse the public about the origin of the jewelry. Haydel sent cease-and-desist letters to Nola Spice that made the following demands upon Nola Spice:

> [1] remove from your website all display, mention of or reference to the bead dog design; [2] cease any and all promotion, sale, and/or use of the above-described materials in any business activities you are now conducting; [3] impound any and all goods containing Haydel's copyrighted and trademarked bead dog design and that you forward these impounded goods to Haydel's bakery immediately; [4] send to Haydel's an accounting of all sales you have made of materials containing the bead dog design; [5] provide Haydel's with a list of all customers who have purchased bead dog materials from your company (whether through Etsy.com website or by other means); [6] compensate Haydel's for all sales of materials containing its trademarked and copyright bead dog design; [7] compensate Haydel's all attorneys fees it has incurred and will incur in the future in addressing this matter.

Nola Spice's Sum. Judg., Exh. 17, Rec. Doc. 60-21, p. 2.  Haydel

initially alleged that Duarte did not comply with the letter and continued to post pictures of herself in front of Haydel's statues and use images of Haydel's poster in proximity to photos of her bead dog merchandise on Facebook.com, Twitter.com, and Pinterest.com; however, at oral argument, the parties agreed that once Duarte received and opened the letter, she promptly removed the images. Trans., August 14, 2013 Hearing, p. 12, lines 4-8.

Pursuant to the Digital Millennium Copyright Act ("DMCA"), Haydel also sent "take down" notices to the hosts of several websites on which Nola Spice sold bead dog merchandise. Nola Spice alleges that the take down notices led to the removal of Nola Spice's merchandise from Etsy.com, Twitter.com, Storenvy.com, and Facebook.com, though Haydel alleges that merchandise listings still appeared on Storenvy.com even after the notices were sent.[1] At oral argument on this issue, counsel for Duarte indicated that she is currently able to post and sell some of her bead dog merchandise, but fears full scale operations because too many DMCA take down notices could lead to a permanent ban from selling her goods on those sites. Trans., Aug. 14, 2013 Hearing, p. 53, line 2-25 through p. 54, lines 1-7.

---

[1] Nola Spice asserts that a representative of Facebook initially questioned the DMCA take down notice from Haydel because he did not see how the content on Duarte's Facebook profile violated Haydel's rights. Nola Spice's Sum. Judg., Rec. Doc. 60-23, Exh. 19.

Nola Spice filed its complaint against Haydel on October 16, 2012 seeking (a) a declaratory judgment that Nola Spice's activities are not in violation of the Lanham Act, 15 U.S.C. § 1051 *et seq.* ("Lanham Act") or any other federal trademark law, (b) damages for unfair trade practice under the Louisiana Unfair Trade Practices Act ("LUTPA"), Louisiana Revised Statute §51:1401, and (c) the cancellation of Haydel's trademarks under 15 U.S.C. § 1119. (Rec. Doc. 1) Haydel answered the complaint and asserted a Counterclaim against Nola Spice and a Third Party Complaint against Duarte. (Rec. Doc. 7) Haydel asserts counterclaims for (a) trademark infringement, false designation of origin and trademark dilution, all in violation of the Lanham Act, (b) unfair competition under LUTPA, and (c) copyright infringement under § 106 of the Copyright Act, 15 U.S.C. § 106. Haydel seeks injunctive relief and damages.

Haydel filed a motion for preliminary injunction on May 22, 2013, originally setting the motion for hearing on July 17, 2013. In the interim, Nola Spice filed a motion for summary judgment on July 1, setting it for hearing on July 17, 2013. (Rec. Doc. 60) The Court continued the hearing date for both motions to August 14, 2013. While these motions were pending, Nola Spice filed a partial motion for summary judgment and a motion in limine. (Rec.

Docs. 71, 80) Haydel also filed a motion for summary judgment, a motion to strike certain exhibits from Nola Spice's motion for summary judgment, and a motion for expedited hearing of the motion to strike. (Rec. Docs. 85, 97, 99) All of the foregoing motions were opposed and set for hearing on August 14, 2013 on the briefs.

## PARTIES' ARGUMENTS

Nola Spice asserts that, as a matter of law, it is entitled to the entry of a declaratory judgment stating that it is not infringing on Haydel's trademarks. It also seeks summary judgment as to: (a) its claim that Haydel's trademarks should be cancelled and (b) its claim for unfair trade practices in violation of LUTPA. Nola Spice argues that, consequently, Haydel's counterclaim alleging trademark infringement in violation of the Lanham Act should be dismissed. Nola Spice also seeks summary judgment as to Haydel's counterclaims alleging trademark dilution and "passing off" in violation of the Lanham Act, unfair competition under LUTPA, and copyright infringement in violation of the Copyright Act.

Following Nola Spice's motion for summary judgment, Haydel filed its own motion for summary judgment, which the Court will treat as a cross-motion for summary judgment. In this motion,

Haydel asks the Court to grant summary judgment in its favor as to all claims asserted against Nola Spice and/or Duarte. Specifically, Haydel maintains (a) that there is no issue of material fact as to any of Nola Spice's or Duarte's claims against Haydel, and (b) that Haydel should prevail on its claims as a matter of law.

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (citing former FED. R. CIV. P. 56(c)); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. Little, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable

jury could not return a verdict for the nonmoving party." <u>Delta</u>, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" <u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1263-64 (5th Cir. 1991) (citation omitted). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." <u>Id.</u> at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. <u>See</u> <u>Celotex</u>, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. <u>See</u> <u>id.</u> at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for trial. <u>See,</u>

e.g., id. at 325; Little, 37 F.3d at 1075.

### DISCUSSION

**A. Admissibility of Certain Exhibits**

As an initial matter, the Court must deal with the admissibility of certain exhibits attached to the foregoing motions for summary judgment.

**1. Expert Report of Molly Buck Richard**

In its motion for summary judgment, Haydel relies at least in part on the opinions stated in Molly Buck Richard's expert report. However, the Court recently ordered that this expert report be excluded at trial. (Rec. Doc. 102) Because this testimony is inadmissible at trial, and will never be reducible to admissible form, it must be excluded on summary judgment. See Fowler v. Smith, 68 F.3d 124, 126 (5th Cir. 1995). Likewise, the Court will not consider Haydel's expert report.

**2. Motion to Strike**

Haydel challenges the admissibility of Exhibits 1, 2, 3, 5, 16, 21, 22, 23, 27, 28, 29, 30, and 32 to Nola Spice's Motion for Summary Judgment. The Court need not determine the admissibility of these exhibits, however, because it is able to resolve the instant motions without reference to the challenged exhibits. Therefore, the Motion to Strike is denied as moot.

**B. Declaratory Judgment of Non-Infringement on Haydel's Trademarks**

There are two elements to a successful infringement claim under the Lanham Act: (a) proof of "ownership in a legally protectible mark," and (b) proof of a likelihood of confusion. Amazing Spaces, Inc. v. Metro Mini Storage, 608 F.3d 225, 235-36 (5th Cir. 2010); see also Firefly, 617 F. Supp. 846.

Nola Spice argues that it is not infringing on Haydel's trademarks because Haydel's marks are not legally protectible. Nola Spice contends that Haydel's marks are generic, thus not protected as explained in Firefly Digital Inc. v. Google, Inc. 817 F. Supp. 2d 846 (W.D. La. 2011). Alternatively, Nola Spice asserts that Haydel's trademarks are merely descriptive and have not taken on a secondary meaning as is required under Firefly, and thus are unprotected. Furthermore, and in the alternative, Nola Spice asserts that, even if the Court finds that Haydel owns legally protectible marks, Nola Spice is not infringing on the marks because (a) there is no likelihood of confusion between Nola Spice's jewelry and Haydel's products, which is essential to finding trademark infringement under CheckPoint Fluidic Systems International, Ltd. v. Guccione, 10-4504, 2012 WL 3255200, *4 (E.D. La. Aug. 8, 2012) (Vance, J.), and (b) there is no evidence that Nola Spice or Duarte ever used the phrase MARDI GRAS BEAD

12

DOG or made bead dog merchandise that copies Haydel's purported BEAD DOG DESIGN trademark.

In opposing Nola Spice's argument, Haydel asserts that to be protectible, a mark must be used in commerce and be distinctive. 15 U.S.C. § 1051 *et seq*. Haydel argues that a mark is protectible under Taco Cabana if it is either inherently distinctive or has gained a secondary meaning. Taco Cabana International, Inc. v. Two Pesos, Inc., 932 F.2d 1113 (5th Cir. 1991) aff'd 505 U.S. 763 (1992).

Haydel argues that its marks are protectible because they are not generic or descriptive. Haydel asserts that is marks are not generic because the public associates Mardi Gras Bead Dog jewelry, clothing, and baked goods with Haydel as evidenced by the numerous online stories featuring Haydel's Mardi Gras Bead Dog. Haydel contends that their marks are not descriptive because the term MARDI GRAS BEAD DOG and the BEAD DOG DESIGN do not describe jewelry, clothing, or baked goods. Haydel points to its expert report, which contains the opinions of Molly Buck Richard, as support for this contention.

Even if Haydel's marks are descriptive, Haydel argues that its marks have acquired a secondary meaning because the public primarily associates the term MARDI GRAS BEAD DOG and the BEAD

13

DOG DESIGN with a single producer, Haydel. Moreover, Haydel avers that it has spent over $600,000 on advertising, which it asserts is relevant under Zatarain's, Inc. v. Oak Grove Smokehouse, Inc., 698 F.2d 786, 795 (5th Cir. 1983) abrogated on other grounds by KP Permanent Make-Up, Inc. v. Lasting Impressions I, Inc., 543 U.S. 11 (2004). At oral argument, counsel for Haydel indicated that he would classify the mark arbitrary, or perhaps suggestive in regards to jewelry. Trans., August 14, 2013 Hearing, p. 25, line 24, p. 26, lines 6-13.

A valid trademark registration is *prima facie* evidence that a mark is valid and that the owner of the mark has the exclusive right to use the mark, but the presumption of validity that is created may be rebutted by proof that the mark is not inherently distinctive. Amazing Spaces, 608 F.3d at 237. Therefore, Nola Spice has the burden of proving that Haydel's marks are not inherently distinctive. Courts often employ the Abercrombie test to determine the distinctiveness of a word mark. Id. (relying on Abercrombie & Fitch Co. v. Hunting World, Inc., 537 F.2d 4 (2d Cir. 1976)). When dealing with a non-word mark, the Fifth Circuit has held that the Seabrook test is often preferred over the Abercrombie test. Id. at 243. Both tests are discussed below.

1. **Abercrombie** Test as Applied to the MARDI GRAS BEAD DOG Word Mark

The Abercrombie test creates five categories, ranked from least to most distinctive: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, and (5) fanciful. Amazing Spaces, 608 F.3d at 240. A generic mark is not legally protectible, and a descriptive mark is only protectible when it has gained secondary meaning. Id.

"A generic term refers to a particular genus or class of which an individual article or service is but a member." Texas Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc., 951 F.2d 684, 692 (5th Cir. 1992) (internal citations omitted). "A generic term connotes the basic nature of articles or services rather than the more individualized characteristics of a particular product." Amazing Spaces, 608 F.3d at 241. "The more common method of determining whether a term is generic is to ask whether the public perceives the term primarily as the designation of the article." March Madness Athletic Ass'n, L.L.C. v. Netfire, Inc., 162 F. Supp. 2d 560, 568 (N.D. Tex. 2001)

"A descriptive term identifies a characteristic or quality of an article or service, such as its color, odor, function, dimensions, or ingredients.... Examples of descriptive marks would include Alo with reference to products containing gel of

15

the aloe vera plant and Vision Center in reference to a business offering optical goods and services.... " Zatarains, Inc., 698 F.2d at 795; Texas Pig Stands, 951 F.2d at 692-93. A descriptive mark is only protectible if the mark has taken on a secondary meaning. Id. "Secondary meaning occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself." Amazing Spaces, 608 F.3d at 247; Texas Pig Stands, 951 F.2d at 692-93. Factors relevant to the secondary meaning inquiry are:

> (1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of use of the mark or trade dress in newspapers and magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress.

Amazing Spaces, Inc, 608 F.3d at 248. The primary focus of this inquiry is the effectiveness of the trademark owner's efforts, not the extent. Zatarains, Inc., 698 F.2d at 795. A claim of secondary meaning presents a question of fact. Aloe Creme Laboratories, Inc. v. Milsan, Inc., 423 F.2d 845, 849 (5th Cir. 1970).

The Court finds that the word mark MARDI GRAS BEAD DOG must be either generic or descriptive without secondary meaning, and therefore is not protectible. The mark is generic because there

16

is a product--a bead dog--and the term MARDI GRAS BEAD DOG describes this entire class of products, rather than the individualized characteristics of Haydel's products. Haydel contends that "[a] registered mark shall not be deemed to be the generic name of goods or services solely because such mark is also used as a name of or to identify a unique product or service." 15 U.S.C. § 1064.  While this is certainly true, Haydel ignores the sentence following the cited phrase, which states that "[t]he primary significance of the registered mark to the relevant public rather than purchaser motivation shall be the test for determining whether the registered mark has become the generic name of goods or services on or in connection with which it has been used." 15 U.S.C § 1064. Courts have construed this to mean that "the *primary* significance of the mark must be its indication of the nature or class of the product or service, rather than an indication of source." <u>Glover v. Ampak, Inc.</u>, 74 F.3d 57, 59 (4th Cir. 1996) Therefore, the relevant inquiry is whether "when purchasers walk into retail stores and ask for [a certain item], they regularly mean any brand of [that product], and not specifically [the defendant's product]." <u>Id.</u>

For example, the term "thermos" is generic because when customers enter a store and ask for a "thermos," they are

17

generally looking for *any* vacuum bottle, not just the vacuum bottles manufactured by King Seely Thermos, Co. Id. at 59. The evidence in the record suggests that this is the case with Haydel's bead dogs. In fact, Haydel itself points to online conversation between Duarte and Georgia Wilson, the owner of a local business known as "The Bead Shop," that shows that customers looking for ""bead dogs" are not looking only for Haydel's bead dogs. In this conversation, Wilson's customer inquired about purchasing a bead dog from The Bead Shop. Wilson informed her that she did not make such dogs, but directed her to Fleurty Girl. When the customer noted that she did not wish to spend that much money on the necklace, Wilson directed her to Duarte who eventually sold a bead dog product to the customer. This conversation contradicts Haydel's contentions that the public primarily associates a bead dog with Haydel because, if that were the case, Wilson and her customer would have only thought of Haydel for this request.

Alternatively, if the mark is not generic, it can only be descriptive, and is still not protectible because the proof that Haydel puts forth to prove secondary meaning is insufficient. The Court finds that above-listed factors from Amazing Spaces weigh against finding secondary meaning. Amazing Spaces, 608 F.3d at

18

248. Haydel has had a registered mark for this phrase for just under four years, which is too brief a time when compared with other cases. See Aloe Creme Laboratories, Inc., 423 F.2d at 849-50 (upholding a district court's finding that 17 years of sales, over $3 million in advertising, national advertising and publications, and testimony from 8 store owners that the appellant's product was synonymous with aloe was insufficient proof of secondary meaning); see also Texas Pig Stands, Inc., 951 F.2d at 692 (upholding jury verdict finding secondary meaning where the plaintiff had used the name "pig sandwiches" for over 60 years and was widely-known among consumers for selling such products).

Moreover, Nola Spice provides uncontroverted evidence that sales of MARDI GRAS BEAD DOG jewelry were minimal--amounting to around $30,000 in sales over four years, including Haydel's direct sales and sales through its licensee, Fleurty Girl. Haydel presented no survey or direct consumer evidence to controvert this evidence. Instead, Haydel points to media coverage of a fundraiser that took place at a discrete period of time in 2012 and evidence that it spent nearly $600,000 on advertising. This does not, however, prove the *effect* of Haydel's advertising, which is the valid inquiry under Zatarain's, Inc.. As for the

media coverage, there is no guarantee that (a) the articles were viewed by the public, or (b) the public understood Haydel's role in relation to the role of the LA-SPCA. As for the amount spent on advertising, such evidence is irrelevant because it is the effects of the expenditures that are to be considered.[2]

**2. <u>Seabrook</u> Test as Applied to Haydel's BEAD DOG DESIGN**

While the Fifth Circuit has not gone so far as to prohibit the application of the <u>Abercrombie</u> test to non-word marks, it cautions in <u>Amazing Spaces</u> that this test is often unworkable outside of the realm of word marks because it "fails to illuminate the fundamental inquiry" of whether the mark's "intrinsic nature serves to identify" its owner. <u>Amazing Spaces</u>, 608 F.3d at 243. When the <u>Abercrombie</u> test is inapplicable, courts may apply the <u>Seabrook</u> test which asks:

> [1] whether it was a "common" basic shape or design,
> [2] whether it was unique or unusual in a particular
> field, [3] whether it was a mere refinement of a
> commonly-adopted and well-known form of ornamentation

---

[2]At oral argument, counsel for Haydel even came close to conceding that Haydel's marks lack secondary meaning. When asked if the attainment of secondary meaning was truly the issue, counsel for Haydel stated that secondary meaning was not the relevant inquiry and that "you can't start anything if you get cut out – if your knees get cut out from underneath you." Trans., August 14, 2013 Hearing, p.26, lines 16-18. In making this statement, counsel for Haydel seemed to argue that the marks deserved protection because Haydel has spent large amounts of time and money developing its mascot, and it is inequitable to allow a third party to ride on Haydel's coattails. Unfortunately for Haydel, trademark law offers no such protection while Haydel ramps up its operation.

for a particular class of goods viewed by the public as a dress or ornamentation for the goods, or [4] whether it was capable of creating a commercial impression distinct from the accompanying words.

Seabrook Foods, Inc. v. Bar-Well Foods Ltd., 568 F.2d 1342 (C.C.P.A. 1977); Amazing Spaces, 608 F.3d at 243. The Fifth Circuit notes, however, that the first three "questions are merely different ways to ask whether the design, shape or combination of elements is so unique, unusual or unexpected in this market that one can assume without proof that it will automatically be perceived by customers as an indicator of origin—a trademark." Amazing Spaces, 608 F.3d at 243-44 (internal citation omitted) (holding that a five-point star set within a circle was not inherently distinctive because it does not automatically indicate its association with the plaintiff self-storage business.)

Defendants have not put forth any proof that the "design, shape or combination of elements" of the BEAD DOG DESIGN is so "unique, unusual or unexpected in this market that one can assume without proof that it will automatically be perceived by customers as an indicator of origin." Id. Haydel repeatedly asserts that people associate Haydel with the bead dog because there is one in front of their store and they engaged in the Paws on Parade campaign, but as has been noted, Haydel does not

21

provide any support for this assertion. Moreover, financial records indicate that Haydel and its licensee, Fleurty Girl, sold less than 200 pieces of BEAD DOG DESIGN jewelry over a four year span, which negates Haydel's unsupported assertions that their designs were wildly popular and integrated into the culture of New Orleans. Nola Spice Mtn Sum. Judg., Exh. 24-25, Rec. Docs. 60-28, 60-29.

Common sense, on the other hand, indicates that, the design and idea of the bead dog is so commonplace that children in the street have replicated it for over sixty years during Mardi Gras parades, and that it is Haydel that based their design off of the original Mardi Gras bead dog trinkets. In fact, at oral argument, counsel for Haydel stated that when the Haydel family set out to choose its mascot, it looked for "something that is generically oriented to the City of New Orleans but not attached to your baking goods or jewelry." Trans., August 14, 2013 Hearing, p. 8, lines 13-15. Thus, the Court finds it unlikely, without the assurance of consumer surveys and other conclusive proof, that consumers in the New Orleans market would view the BEAD DOG DESIGN and automatically associate it with Haydel. A New Orleans consumer may see the dog and associate it with the statues found around the area as part of the "Paws on Parade" fundraiser, but

there is no proof in the record that consumers associate the Paws on Parade statues with Haydel. Haydel points to the fact that there are plaques next to the statues with Haydel's name on it, but concedes that most people would not have been able to see the plaques, as the statues are most often viewed from a distance, while driving and the plaques are rather small. Nola Spice Opp. to Sum. Judg., Exh 1., Rec. Doc. 88-1, p. 67-68.

Viewing all of the facts in a light most favorable to Haydel, the Court finds that the evidence overwhelmingly supports Nola Spice's arguments that Haydel's marks are either generic or descriptive without secondary meaning, such that no reasonable jury could find that Nola Spice is infringing on either of Haydel's marks. Therefore, Nola Spice's motion for summary judgment must be granted as to request for a declaratory judgment of non-infringement. <u>Amazing Spaces</u>, 608 F.3d at 234 (Summary judgment may be granted as a matter of law when the Court finds no reasonable jury could ever rule in favor of the non-moving party.)

### C. Cancellation of Haydel's Trademarks

Nola Spice requests judgment in their favor on this claim, but they do not present any law or evidence in support of this contention. In its cross-motion for summary judgment, Haydel

23

argues that their marks must be considered generic to cancel their registrations. 15 U.S.C. § 1064; Soweco, Inc. v. Shell Oil Co., 617 F.2d 1178. Though 15 U.S.C. § 1064 states that a mark may be cancelled "[a]t any time if the registered mark becomes the generic name for the goods or services," courts have determined that the term "generic" as used in the Act extends to both generic and descriptive marks that have not gained secondary meaning. 15 U.S.C.A. § 1064; Am. Heritage Life Ins. Co. v. Heritage Life Ins. Co., 494 F.2d 3, 11 (5th Cir. 1974) (noting that some courts distinguish between generic and descriptive terms, but in any case, the distinction between them is necessarily one of degree); see also March Madness Athletic Ass'n, L.L.C. v. Netfire, Inc., 162 F. Supp. 2d 560, 568 (N.D. Tex. 2001) ("The more common method of determining whether a term is generic is to ask whether the public perceives the term primarily as the designation of the article."); see also, Glover v. Ampak, Inc., 74 F.3d at 59 (To find a product generic "the *primary* significance of the mark must be its indication of the nature or class of the product or service, rather than an indication of source.")

The Court already determined that Haydel's marks were either generic or descriptive without secondary meaning, which means

24

that their mark may be cancelled, even without firmly classifying the marks as one or the other. Therefore, the Court finds that Haydel's trademarks must be cancelled.

**D. LUTPA claims**

Nola Spice asserts that Haydel is liable under LUTPA because it is "trying to push its weight around" in order to unfairly compete with and squash Nola Spice. Nola Spice lists several examples of such behavior in support of this contention: (a) Haydel claims a monopoly over a long-standing tradition that it did not create, (b) it made misrepresentations to the U.S. Copyright office, (c) Haydel misrepresented facts to Facebook in their takedown notices which caused Nola Spice's webpage to be altered when it was not engaging in improper conduct, (d) Haydel is bullying a small business with threats of a non-viable infringement claim, (e) Haydel has made misrepresentations in court documents that the bead dog is known to be linked to Haydel when its own financial documents show that revenue from bead dog products is minimal, (f) Haydel trademarked the phrase "Mardi Grad Bead Dog," and the design "bead dog" so as to create a monopoly over the idea.

LUTPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or

commerce are hereby declared unlawful." La. R.S. § 51:1405. Courts have determined that:

> "[w]hat constitutes deceptive practices prohibited by the statute is determined on a case-by-case basis." Louisiana courts have restrictively defined unfair practices as conduct "which offends established public policy and which is unethical, oppressive, unscrupulous, or substantially injurious." The specificity of the state courts infers a strict construction. A trade practice is deceptive "when it amounts to fraud, deceit, or misrepresentation."

Am. Mach. Movers, Inc. v. Mach. Movers of New Orleans, LLC, 136 F. Supp. 2d 599, 604 (E.D. La. 2001) aff'd sub nom. Am. Mach. Movers v. Mach. Movers of New Orleans, LLC, 34 F. App'x 150 (5th Cir. 2002) (defendant did not violate LUTPA "by setting up a competing business while he was still employed at AMM and by soliciting AMM's customers") citing Jefferson v. Chevron U.S.A. Inc., 713 So.2d 785, 792 (1998).

The Court does not find that Haydel's actions to protect its products were by any means "unethical, oppressive, unscrupulous, or substantially injurious." Id. Haydel was simply engaging in normal business practice and taking appropriate and ordinary measures to protect what it believed were legally protectible marks and copyrights. Therefore, Nola Spice's motion for summary judgment must be denied as it pertains to their LUTPA claims.

**E. Dismissal of Haydel's Counterclaims**

Haydel asserts counterclaims for copyright infringment in violation of the Copyright Act; trademark infringement, trademark dilution, and "passing off" in violation of the Lanham Act; and unfair trade practices under LUTPA. Nola Spice moves for summary judgment on these counterclaims.

**1. Copyright Infringement**

Haydel avers that under Peel & Co. v. The Rug Market, 238 F.3d 391 (5th Cir. 2001), it is required to show (1) proof of ownership of a valid copyright and (2) unauthorized copying. Haydel maintains that its copyright registration is *prima facie* proof of a valid copyright, and Nola Spice does not refute this assertion. Moreover, Haydel argues that Nola Spice's contention that Haydel's copyright is invalid because it is derivative of the traditional bead dog trinket is without merit because a copyright only requires minimal originality under ZZ Top v. Chrysler Corporation, 54 F. Supp. 2d 983 (W.D. Wash. 1999).

As to the copying element, Haydel argues that it shows the requisite proof under Miller v. Universal Studios Incorporated, 82 F.2d 1365, 1375 (5th Cir. 1981) that Nola Spice had access to their design and that there are substantial similarities in the works; therefore, Haydel is entitled to summary judgment. Haydel

27

alleges that its statue was in public, so the access element is easily satisfied. Haydel further argues that any copying is a violation of Haydel's exclusive rights, not just exact replicating. Haydel contends that Nola Spice's bead dogs are derivative works of Haydel's design, as defined in 17 U.S.C. § 101, and therefore its goods are in violation of Haydel's copyright.

In response, Nola Spice presents two options to the Court: (a) Haydel's copyright is invalid, thus the design is not protected, or (b) Haydel has a valid copyright over their specific bead dog design, but no proof that Nola Spice or Duarte infringed upon their copyrighted design by making traditional style bead dogs. In support of its first theory, Nola Spice alleges that, if Haydel's bead dog design is not distinctly different from the traditional bead dog design, as Haydel's former attorney, Mr. John Hazard represented that it was, then Haydel's copyright is invalid, and there is nothing upon which Nola Spice can infringe.

In support of their second theory, Nola Spice and Haydel point to correspondence between Haydel's attorney, Mr. Hazard, and the U.S. Copyright Office, wherein the Copyright Office noted that the design Haydel submitted appeared to be very

similar to traditional bead dog creation, which is not able to be copyrighted. Mr. Hazard subsequently presented the Copyright Office with several points of originality and dissimilarity from the traditional design and Haydel was granted a copyright over the design. With this in mind, Nola Spice contends that Haydel's copyright only applies to this distinctly different design, and Nola Spice's jewelry is composed only of traditional bead dogs; therefore, there is no copying, thus no infringement.

Nola Spice compares the present case to Herbert Rosenthal Jewelry Corp. v. Kalpakian, 446 F.2d 738 (9th Cir. 1971) wherein there was no infringement when a party made a similar jeweled bee pin because a bee pin made of jewels is an idea with only so many expressions. Moreover, Nola Spice asserts that, under Streeter v. Rolfe, 491 F. Supp. 416 (W.D. La. 1980), a person can use an idea of another as long as she does not plagiarize the expression of that idea. Nola Spice further argues that its bead dogs are not exact copies of Haydel's bead dogs, noting that Haydel's bead dog is a caricature of a bead dog. In contrast, Nola Spice argues that its jewelry is made in the style of traditional bead dogs, does not always use smaller beads for the nose and tail, and does not have a necklace, but rather, Nola Spice's dogs have wire or bead tails and noses,

and, on a few designs only, a collar made of fabric or other non-bead materials.

Haydel's copyright certificate covers "photograph(s), jewelry design, 2-D artwork, [and] sculpture." Counter Plaintiff's First Am. Cmpt, Exh. 1, Rec. Doc. 19-1. The Court has determined that it need not consider whether Haydel has a valid copyright because, regardless of that determination, the Court finds that Nola Spice's design does not constitute unauthorized copying of Haydel's design.

To determine whether a party has engaged in unauthorized copying, the Court must consider (1) whether the party alleged to be infringing "had access to the copyrighted material and" (2) whether "there is a substantial similarity between the two works." Norma Ribbon & Trimming, Inc. v. Little, 51 F.3d 45, 47 (5th Cir. 1995). In determining if a party had access, the court should consider "whether the person who created the allegedly infringing work had a reasonable opportunity to view the copyrighted work." Peel & Co., Inc., 238 F.3d at 394. In determining if two works are substantially similar, the court must engage in a side-by-side comparison "to determine whether a layman would view the two works as substantially similar." Id. While this question is one of fact, "summary judgment may be

appropriate if the court can conclude, after viewing the evidence and drawing inferences in a manner most favorable to the nonmoving party, that no reasonable juror could find substantial similarity of ideas and expression." <u>Id</u>.

Because the BEAD DOG DESIGN statues were all over the New Orleans metropolitan area, it is fairly clear that Duarte had access to the design, meaning that the main issue is whether the parties' products are substantially similar.  In <u>Rosenthal</u>, the Ninth Circuit engaged in a discussion of this requirement that is instructive to the current issue.  <u>Rosenthal</u>, 446 F.2d 738. In that case, the copyright owner of a jeweled bee pin brought allegations of copyright infringement against another jeweler who manufactured a nearly identical pin. <u>Id.</u> The plaintiff in that case contended that "its copyright registration of a jeweled bee entitles [it] to protection from the manufacture and sale by others of *any object that to the ordinary observer is substantially similar in appearance*." <u>Id.</u> at 740 (emphasis added).  The Ninth Circuit rejected this argument, noting that the plaintiff seemed to confuse patent and copyright. <u>Id</u>. While patents grant monopolies to the creators of novel, useful, and nonobvious advances, copyrights provide substantially less protection. <u>Id</u>. Copyrights only guard against copying of an

expression. Id.; Streeter, 491 F.Supp. at 420-21.  An idea is not copyrightable. Streeter, 491 F.Supp. at 420-21. The Ninth Circuit recognized that the line between an expression and an idea may be blurred, especially in situations where there are only a few ways in which to express an idea, as was the case with the jeweled bee pins; however, when the call is a close one, the court urges the consideration of the "extent of the copyright owner's monopoly" were it granted exclusive rights to their work. Rosenthal, 446 F.2d at 742.

While it is clear from the parties' arguments that there are similarities between the designs, the Court finds the Rosenthal court's reasoning persuasive and adopts it in this matter. There are only so many ways in which to create a bead dog, and if the Court were to grant exclusive rights to Haydel, its monopoly over a long-standing Mardi Gras tradition would be expansive, which goes against the policy underlying copyright law.[3] Therefore, summary judgment in favor of Nola Spice must be granted on this issue.

---

[3] In his deposition, David Haydel, Jr. stated that as it relates to jewelry, clothing, and baked goods, he could not "envision anybody being able to make a bead dog and sell it that doesn't infringe on [Haydel's] copyright." Nola Spice Mot. Sum. Judg., Exh. 15, Rec. Doc. 60-19, p. 10, lines 2-11.

**2. Trademark Claims**

To succeed on its trademark infringement, unfair competition, and false designation of origin claims, Haydel asserts that, under <u>Taco Cabana</u>, it must prove: (a) that its marks qualify for protection under the law, and (b) that the alleged infringer's use of the mark creates a likelihood of confusion in the minds of potential customers. Because the Court found that Nola Spice is entitled to summary judgment in their favor on their declaratory judgment action for non-infringement, Haydel's counterclaim for trademark infringement must be dismissed. The remainder of Haydel's trademark claims are discussed below.

### a. Trademark Dilution in violation of the Lanham Act and La. Rev. Stat. Ann. 51:223.1

Nola Spice seeks summary judgment on Haydel's counterclaim for trademark dilution. Nola Spice asserts that one of the elements required to prove trademark dilution is that the marks are "famous as distinct" as is noted in <u>Checkpoint Fluidic Systems International, Ltd. v. Guccione</u>, 888 F. Supp. 2d 780, 793-94 (5th Cir. 2012); and, that Haydel will not be able to prove this element. Additionally, Nola Spice asserts that they have not "adopted" either of Haydel's Marks because neither of them have used the phrase MARDI GRAS BEAD DOG or made a large

33

statue to resemble the BEAD DOG DESIGN.

Under the Lanham Act, "the owner of a famous mark that is distinctive ... shall be entitled to an injunction against another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark." CheckPoint Fluidic Sys. Int'l, Ltd., 2012 WL 3255200 at *5 (internal citations omitted). To prevail on a trademark dilution claim, Haydel "must prove that (1) its marks are famous and distinctive; (2) [Nola Spice] adopted its mark after [Haydel's] had become famous and distinctive; and (3) [Nola Spice] caused dilution of [Haydel's] mark." Id. Similarly, "[t]he Louisiana Anti-Dilution statute [La. Rev. Stat. Ann. § 51:223.1] protects a mark based upon its strength, [...] and that strength can be demonstrated by showing a mark to either be distinctive or to have acquired a secondary meaning." Prudhomme v. Procter & Gamble Co., 800 F. Supp. 390, 395 (E.D. La. 1992).

As noted above, the Court finds that Haydel's marks are not inherently distinctive, but rather that they are either generic or descriptive without secondary meaning. Therefore, summary judgment must be granted in favor of Nola Spice on this issue.

34

See Firefly, 817 F. Supp. 2d at 867.

### b. False Designation of Origin

A person may be held liable for false designation of origin if they use a "word, term, name symbol, or devices, or any combination thereof" that:

> **(A)** is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>
> **(B)** in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C.A. § 1125 (West). To succeed on a claim for "passing off," Haydel must prove that their marks are "entitled to protection because [they are] distinctive or [have] acquired a secondary meaning", and that the phrases/products are so similar that they are "likely to confuse consumers." KV Pharm. Co., 354 F. Supp. 2d at 686. Therefore, the elements of a "passing off" claim are nearly identical to the consideration made in the preceding trademark infringement claim. Because the Court has held that Nola Spice is entitled to summary judgment on their trademark infringement claim, specifically stating that no secondary meaning has attached to Haydel's marks, summary

judgment must also be granted in favor of Nola Spice as to the false designation of origin claim.

### 3. Unfair Trade Practices under LUTPA

Haydel asserts in its countercomplaint that Nola Spice's intentional and willful infringement constitutes unfair trade practices. In light of the finding that Nola Spice did not infringe on Haydel's trademarks or copyrights, Haydel is not entitled to damages under LUTPA. Therefore, Nola Spice's motion for summary judgment must be granted on this issue.

Accordingly,

**IT IS ORDERED THAT** Plaintiff/Counter-Defendant Nola Spice, LLC and Third Party Defendant Raquel Duarte's **Motion for Summary Judgment** (Rec. Doc. 60) is hereby **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that a declaratory judgment stating that Nola Spice Designs, LLC is not infringing on the trademarks of Haydel Enterprises d/b/a/ Haydel's Bakery be entered.

**IT IS FURTHER ORDERED** that Nola Spice Design, LLC's claims under the Louisiana Unfair Trade Practices Act, La. R.S. § 51:1405 *et seq.*, be **DISMISSED with prejudice**

**IT IS FURTHER ORDERED** Defendant/Counter-Plaintiff Haydel Enterprises' **Motion for Summary Judgment (Rec. Doc. 85)** is

36

**DENIED.**

**IT IS FURTHER ORDERED** that Haydel Enterprises' counterclaims against Nola Spice Designs, LLC and Raquel Duarte for copyright infringement in violation of 17 U.S.C § 106, false designation of origin in violation of the Lanham Act, trademark infringement in violation of the Lanham Act, trademark dilution in violation of the Lanham Act and Louisiana's Anti-Dilution Act, and unfair trade practices under LUTPA be **DISMISSED with prejudice.**

**IT IS FURTHER ORDERED** that Haydel Enterprise's Motion to Strike **(Rec. Doc. 97)** is **DENIED as moot.**

New Orleans, Louisiana this 28th day of August, 2013.

CARL J. BARBIER
UNITED STATES DISTRICT COURT